UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EZEKIAL JOHNSON JR.,
   Plaintiff,

v.

OCEAN SPRAY CRANBERRIES, INC.,
   Defendants.

C.A. No. 20-001-JJM-LDA

MEMORANDUM and ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Ezekial Johnson, Jr., an employee at Ocean Spray Cranberries, Inc. ("Ocean Spray") for about a year, claims he faced a hostile work environment[1] because of his race in violation of Title VII of the Civil Rights Act of 1964. At the close of discovery, Ocean Spray filed a Motion for Summary Judgment claiming that Mr. Johnson "has failed to produce competent evidence to establish the essential elements of a hostile work environment claim." ECF No. 97 at 1. Mr. Johnson responds that his colleagues routinely harassed him, put him in physical danger, used racial slurs, and his employer never disciplined them. ECF No. 104. Because this Court finds that a reasonable jury could conclude that Ocean Spray subjected Mr. Johnson to an actionable race-based hostile work environment, the Court DENIES the Motion for Summary Judgment.

---

[1] The Court had dismissed Mr. Johnson's other claim for retaliation and all claims against two individually named defendants. ECF No. 18.

I. **BACKGROUND**[2]

Mr. Johnson began working at Ocean Spray in January 2016, as a "spare," or temporary employee in operations. Ocean Spray transferred Mr. Johnson to full-time work beginning in April 2016 until his termination in February 2017. Mr. Johnson sues his former employee because he experienced a series of discriminatory treatment by other employees and supervisors at the facility. He informed Human Resources ("HR") of these matters. The incidents, which he says support his claim, include the following:

A white supervisor instructed Mr. Johnson, an African American, to clean an area, but did not ask the white spare employee on shift. After Mr. Johnson complained, the supervisor assigned the task to the spare employee, claiming he first assigned it to Mr. Johnson because he would have done a good job.

That same month, Mr. Johnson was away from his workstation emptying compost bins for a prolonged time. A white supervisor yelled at Mr. Johnson for not being where he was supposed to be.

Later that summer, Mr. Johnson did not lock out and tag equipment following safety policy at the facility and HR suspended him for one day. Mr. Johnson asserts that a white co-worker committed the same infraction, and earned a lesser punishment known as a "coaching."

---

[2] In a summary judgment motion, the court is obliged to view the facts "in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." *See LeBlanc v. Great Am. Ins.*, 6 F.3d 836, 841 (1st Cir. 1993)

2

Mr. Johnson also alleged a co-worker's forklift bumped the forklift he was operating, and the co-worker beeped at Mr. Johnson. Mr. Johnson reported the other employee wanted him to get into trouble. The other employee claims this incident did not happen.

Toward the end of the summer, another co-worker informed Mr. Johnson that a group of employees was talking negatively about Mr. Johnson. The co-worker told Mr. Johnson that the conversation seemed racist and involved a slur. Employees within the group told HR that it did not happen or that they may have been talking about Mr. Johnson's work ethic. Several employees reported at this time that Mr. Johnson's work ethic and attendance declined since joining full-employment and thus gaining union coverage.

Mr. Johnson also reported his co-workers complained that he was sitting during an overnight shift. Mr. Johnson felt singled out and offended by comments about his work ethic. There is no explicit evidence that these comments involved his race. Another co-worker claimed Mr. Johnson will "be cool then flip out."

Mr. Johnson also claimed that two times, co-workers falsely accused him of sideswiping work product with his forklift, which damaged the inventory even though he hit nothing, and if he did, the forklift would shut off, which it did not.

Mr. Johnson alleged that someone crossed his name off the overtime sheet, alleging the incident was recorded on camera. Upon investigation, Ocean Spray HR reported the cameras did not produce a culprit. Management later changed the policy to avoid listing employee names on overtime lists.

Mr. Johnson also claimed that Ocean Spray denied him training opportunities he should have had based on seniority, and that Ocean Spray passed him over for less senior, white employees. Several co-workers told Mr. Johnson that they noticed he was being racially discriminated against.

Finally, a co-worker, Mr. Peter Ymer reported to Mr. Johnson and HR that another employee called Mr. Johnson a racial slur and said she did not feel safe in Mr. Johnson's presence. When interviewed, the employee reported she used curse words to express her strong dislike for Mr. Johnson. At first, Mr. Ymer could not say with certainty he heard the employee include the slur in her racist statements, but later said in his HR report that he did hear the employee use the racial slur.

After each of these incidents and investigations, HR found no discrimination. HR offered him feedback to alter his relationships at work. Mr. Johnson was dissatisfied with the results and continued to report incidents to his supervisors and file grievances with his union representative. Following these incidents, Mr. Johnson received disciplinary reprimands including mandatory counseling and suspensions.

In February 2017, Ocean Spray fired Mr. Johnson for not being in his work area as required. He filed a grievance with his union and a disciplinary claim with the Massachusetts Commission Against Discrimination, both of which were denied. Mr. Johnson brings this discrimination claim under Title VII for hostile work environment based on his race.

## II.    STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Summary judgment is proper if after adequate time to prepare, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A dispute is genuine when "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir. 1994) (internal quotation marks omitted) (citations omitted). That said, "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 247-48 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Morris*, 27 F.3d at 748 (internal quotation marks omitted) (citations omitted). Ultimately, a dispute of material fact "is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968).

Summary judgment must also be proper as a matter of law. The Court first considers if the nonmoving party has produced "a sufficient showing on an essential element of its case with respect to which it has the burden of proof." *Celotex*, 477 U.S. 317, 319 (1986). Finally, the court considers facts "in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour v. Dynamics Rsch. Corp.*, 63 F.3d 32, 36 (1st Cir. 1995).

## III. DISCUSSION

Mr. Johnson claims Ocean Spray discriminated against him in the workplace based on race, creating a hostile work environment. Title VII makes it unlawful for an employer to discriminate against an individual "because of such individual's race, color, religion, sex, or national origin" 42 U.S.C. § 2000 e—2(a)(1)(2). Mr. Johnson presents some evidence of a racially charged work environment. He alleges being treated disrespectfully by his white male supervisor, being subject to different disciplinary actions than similar white co-workers, having co-workers refer to him using a racial slur without consequences, having his name crossed off the overtime list, being charged with several infractions that he did not commit, being put in physical danger by a co-worker, and ultimately being terminated for something he alleges he did not do. ECF No. 1 at 7-16. Mr. Johnson also alleges that HR did not take proper action when he reported these discriminatory incidents.

The prima facie elements of his claim are (1) Mr. Johnson is a member of a protected class; (2) Mr. Johnson encountered unwelcome harassment; (3) the harassment was based on Mr. Johnson's race; (4) the harassment was sufficiently

6

severe or pervasive to alter the conditions of Mr. Johnson's employment and created an abusive work environment; (5) conduct was subjectively and objectively offensive, such that a reasonable person would find it hostile and abusive; and (6) Mr. Johnson must establish some basis for employer liability. *O'Rourke v. City of Providence*, 235 F.3d 713, 728 (1st Cir. 2001).

Here, no one disputes that Mr. Johnson, who is an African American male, is a racial minority and thus a member of a protected class. Various depositions and Mr. Johnson's own account, together with reasonable inferences to be drawn from them, suggest that he was harassed and singled out at work because of his race. For instance, Mr. Johnson has presented evidence that he was put in physical danger at work, his white co-workers were promoted and disciplined differently than he, his name was crossed off the overtime list, he was called a racial slur, and he was subject to different standards of discipline than other white employees. These disputes are relevant to whether the work environment was racially hostile. It may well be difficult for Mr. Johnson to prove to a jury that Ocean Spray's actions, individually or collectively, were because of his race, but the Seventh Amendment to the U.S. Constitution and the rules of civil procedure entitle him to a jury determination of those facts and application of the facts to the law. The facts are such that a reasonable jury could find for Mr. Johnson on the first three elements once they hear witness testimony and consider credibility.

Turning to elements four and five: to prove hostile work environment, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult

7

that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Kosereis v. Rhode Island*, 331 F.3d 207, 212 (1st Cir. 2003) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The standard aims to "distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." *Noviello v. City of Boston*, 398 F.3d 76, 92 (1st Cir. 2005). Further, pervasiveness or severity of the conduct is a question of fact for the jury as to whether it is objectively offensive.[3] Mr. Johnson's subjective belief in the offense appears well supported by the record.

Lastly, Mr. Johnson must allege some basis of employer responsibility. Mr. Johnson bases employer liability on his various formal complaints and the investigation yielding no results or discipline for those involved. The Court agrees the evidence put forth, including employee depositions and HR reports, could support employer liability for the harassment.

Ocean Spray argues that Mr. Johnson struggled with attendance at work, did not lock and tag equipment that violated safety standards, struck and damaged product with a forklift, and would often be away from his proper working location. Ocean Spray claims that they treated him like any other employee, and it disciplined and fired him under their policies. While clearly a supported position taken by Ocean Spray, this is a question for the jury.

---

[3] *See Harris v. City of Providence*, 588 F. Supp. 3d 211, 218 (D.R.I. 2022) ("[i]n a case like this where there are disputed facts and much of the evidence will come through testimony about the working conditions in the Department, it is even more important for the Court to leave the fact-finding to a jury to evaluate witness credibility.")

8

Ocean Spray raises credibility issues about Mr. Johnson's claims and asserts that this conduct was not severe or pervasive. But the sheer number of incidents described by Mr. Johnson reflect some evidence of pervasiveness, while severity is typically a metric of how significant the harms were. The jury is a more appropriate factfinder, especially when members of a protected class allege discrimination claims.[4] As these facts, among others, remain in genuine dispute, summary judgment is not proper.

## IV. CONCLUSION

For all these reasons, the Court DENIES Ocean Spray's Motion for Summary Judgment. ECF No. 97.

---

[4] This Court has similarly denied summary judgment in sex discrimination claims on this reasoning. For example, "in cases involving women plaintiffs where legal arguments are frequently novel and innovative, where subtle issues of credibility, inferences, and close legal questions may be involved, where issues concerning the 'genuineness' or 'materiality' of facts are frequently intertwined with law, a single district judge may be a less preferable decision maker than a jury. Juries are likely to be far more diverse and bring a broader range of perspectives to bear on the problem." *Carvalho v. Santander Bank, N.A.*, 573 F. Supp. 3d 632, 647–48 (D.R.I. 2021), quoting Elizabeth M. Schneider, *The Dangers of Summary Judgment: Gender and Federal Civil Litigation*, 59 Rutgers L. Rev. 705, 712 (2007).

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief United States District Judge

July 23, 2024